# Hamilton, Appellant, *v.* Central Railroad of New Jersey.

*Negligence—Railroads—Crossing tracks—"Stop, look and listen"—Death—Presumption—Evidence.*

1. In an action to recover damages from a railroad company resulting from the killing of a man at a grade crossing where it appears that the deceased entered upon the track and was instantly struck by a moving train which he could have seen if he had looked just before going upon the track, a legal presumption is raised that he did not stop, look and listen, which rebuts any presumption that he did.

2. In an action against a railroad company to recover damages for the death of a man killed at a private crossing, a judgment for defendant n. o. v. is properly entered, where the evidence shows that if the deceased had stopped at a point five and one-half feet, or a point six feet, or a point seven feet from the track, he could have seen the approaching engine in time to save himself, that instead of doing so he walked forward with his head down, carrying a railroad tie on his shoulder, and was struck by the tender of the engine moving backwards either before or immediately after stepping upon the track.

Argued Jan. 6, 1910. Appeal, No. 86, Jan. T., 1909, by plaintiff, from judgment of C. P. No. 1, Phila. Co., June T., 1906, No. 952, for defendant non obstante veredicto in case of Margaret Hamilton v. Central Railroad of New Jersey. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband.

At the trial the jury returned a verdict for plaintiff for $4,000. Subsequently the court entered judgment for defendant non obstante veredicto.

MAGILL, J., filed an opinion which was in part as follows:

The plaintiff's husband, William Hamilton, was killed February 22, 1906, by an engine of the defendant company operated by its engineer and fireman while running south on the tracks of the Baltimore & Ohio Railroad near South street in the city of Philadelphia. The deceased was, and had been

for three months, employed by the Black Diamond Coal Company. The yard of this company fronts upon the Schuylkill river north of South street bridge and is intersected by the tracks of the Baltimore & Ohio Railroad Company, part of the coal company's yard being on the westerly or riverside and another part on the easterly side of the railroad tracks. From the part of the yard on the riverside to the part on the easterly side of the tracks a crossing was constructed by planking between the rails. This crossing is about ten feet in width and crosses the tracks diagonally in a northeasterly and southwesterly direction. At the point of the accident there are four tracks, the easterly and westerly tracks being sidings and used for freight purposes, while the two intermediate tracks are used for the general traffic of the road. The distance between the rails of each track is four feet, eight and one-half inches; while the distance between the tracks, measured parallel with the crossing, is eight feet, and measured along the crossing, at right angles to the rails, this distance is seven feet, three inches.

The yard of the Black Diamond Coal Company on the westerly side of the track is inclosed by a board fence with a gate opening opposite the crossing at a distance of twenty-five and one-half feet from the westernmost rail of the westerly track. At the time of the accident, shortly after midday of February 22, 1906, the weather was clear and bright. William Hamilton was engaged in carrying railroad ties from the westernmost part of the coal company's yard across the railroad tracks to that portion of the yard on the easterly side. These ties he carried upon his shoulder, one at a time, and had safely crossed the tracks and deposited two or three ties in the yard on the easterly side, before the accident.

When the accident occurred he had passed from the yard of the coal company on the westerly side of the track with a tie (on his right shoulder, according to the plaintiff's witness, and on his left shoulder, according to the defendant's witnesses), the end of which protruded for about two feet in front of him; he had walked across the westerly or side track, across the intervening space between it and the south-bound

track, and when just about to step upon the south-bound track he was struck by the corner of the tender of defendant's engine then running backward in a southerly direction. Whether the tender struck his body or head, or whether it struck only the tie which in turn struck Hamilton, is not entirely clear under the evidence. From the contact with the engine, however, he was thrown a distance of some twenty to thirty feet and injured in such a way that he died shortly afterwards.

     *    *    *    *    *    *    *    '  *

The evidence in this case clearly demonstrates that the proper place to have stopped, looked and listened for an approaching train was on emerging from between the freight cars standing upon the siding, which were known or must have been known to the deceased to have been idle cars in no danger of moving. If he had stopped, as he could well and safely have stopped, at a point five and one-half feet west of the track on which the engine approached, after crossing the siding, he would have had an unobstructed view of the track for a distance of 1,870 feet; had he stopped at a point six feet back from the track on which the engine approached he would have had a view of the track for a distance of 392 feet, and at a distance of seven feet back from this track he would have had a view of ninety-two feet. At any one of these points the deceased could have stopped with perfect safety to himself. The evidence all goes to indicate that until he approached within a distance of eight feet of the track his view of the approaching engine would have been for a distance of less than ninety-five feet. The testimony of plaintiff's witness, Ross, clearly shows that Hamilton did not stop after emerging from between the freight cars and coming within his line of vision, but that he walked forward until the tender of the engine struck him or the tie which he was carrying upon his shoulder.

The evidence of the defendant's witnesses, Divine and Ward, also shows conclusively that from the time Hamilton emerged from the coal company's yard on the westerly side of the railroad, a distance of twenty-five feet from the track

on which he was struck, he did not stop, but walked forward with his head down, with a tie on his left shoulder, and apparently without looking to the left or to the right, until going upon or about to step upon the south-bound track, where he was struck and killed. It is, therefore, evident that the deceased did that which an ordinarily prudent man would not have done, that he did not exercise ordinary care under the circumstances. He had been working at this place for months, and was thoroughly familiar with the surroundings and conditions there existing. It was clearly his duty to have stopped before reaching the south-bound track, at a point where he could have had a view of the approaching train, and could have heard it had he listened, and this he could safely have done either upon the side track or at a point between the two tracks where he could have stopped in perfect safety. That he did not do so is clear not only from the evidence but from the fact that he was struck by the tender of the engine either before or immediately after stepping upon the track.

The case in its facts nearly approaches Keppleman v. Phila. & Reading Railway Co., 190 Pa. 333, in which it was said, "It must be very obvious that the proper time and place for the plaintiff to have stopped and looked was just when he emerged from the opening in the standing coal train and before stepping on the north track. He would then have had a view of the train for a considerable distance in the direction from which the engine came. His unfortunate mistake was in not looking then. In answer to the question whether if he had stopped and looked before stepping on the north track he could have avoided the collision he truthfully answered in the affirmative."

In this case the testimony of Ross, plaintiff's witness, as well as the testimony of defendant's witnesses, shows conclusively that if Hamilton had stopped and looked before stepping on the south-bound track he could have avoided the collision.

In Sullivan v. Railroad Co., 175 Pa. 361, it is said by Mr. Justice FELL, "The presumption that deceased performed his duty is based upon the fact that the natural instincts of

men leads them to avoid injury. It prevails in the absence of direct testimony upon the subject, but it may be rebutted by proof of facts and circumstances, as well as by direct evidence. It is demonstrated by the testimony that if he obeyed the legal injunction he saw and heard the approaching train; and the only deduction possible is that he did not look and listen, or that seeing and hearing he went on regardless of the danger:" citing Myers v. B. & O. Railroad Co., 150 Pa. 386, in which it is said, "One who is struck by a moving train which is plainly visible from the point he occupied when it became his duty to stop, look and listen, must be conclusively presumed to have disregarded that rule of law and of common prudence and to have gone negligently into an obvious danger." And in Urias v. Penna. R. R. Co., 152 Pa. 326, it was said by Chief Justice PAXSON, "If a person in approaching a track could have had an unobstructed view of the track for 1,950 feet at a point eighteen feet from the track, and he goes upon the track and is injured, it is vain for him to say that he stopped, looked and listened at the point of unobstructed view."

And in Beach v. Penna. R. R. Co., 212 Pa. 567, it is said by Mr. Justice FELL, "It has been said repeatedly that one who goes on a railroad track immediately in front of a moving train which he saw or could have seen if he had looked at the proper place, will be presumed to have been negligent, is in its nature applicable only to clear cases, where the facts and the inferences to be drawn from them are free from doubt, and the conclusion of negligence is irresistible: McNeal v. Pittsburg, etc., Ry. Co., 151 Pa. 184; Muckinhaupt v. Erie Railroad Co., 196 Pa. 213."

Again, in Howard v. Baltimore & Ohio R. R. Co., 219 Pa. 358, it is said by Mr. Justice POTTER, "We have said many times that the rule set forth in Carroll v. Railroad Company, 12 W. N. C. 348, is only applicable to clear cases. It applies only where a person enters upon a railroad track and is struck by a moving train so instantaneously as to raise a legal presumption that he did not stop, look and listen, and to rebut any presumption that he had done so. Where there

is doubt as to negligence on the part of the plaintiff the case is for the jury."

And in Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610, it is said, "When testimony offered by defendant is of a nature to defeat the plaintiff's claim, is not in itself improbable, is not at variance with any proved or admitted facts or with ordinary experience, and comes from witnesses whose candor there is no apparent ground for doubting, the jury is not at liberty to indulge in a capricious disbelief, and if they do so it is the duty of the court to set the verdict aside. Where the proof is of such a character the court may refuse to submit it at all and direct a verdict for the defendant."

We are of the opinion that the presumption of the performance of duty by the deceased in this case has been fully rebutted by proof of facts and circumstances as well as by direct evidence, and that it has been demonstrated by the testimony that if Hamilton had obeyed the legal injunction to stop, look and listen before going upon or approaching the track, he would have seen the approaching train, and that the only deduction possible is that he did not look or listen or, that seeing and hearing he went on regardless of the danger, as was said in Sullivan v. Railroad Co., 175 Pa. 361; and that this case comes within the rule as reiterated in Howard v. Baltimore & Ohio R. R. Co., 219 Pa. 358, that the deceased, having entered upon a railroad track and having instantaneously been struck by a moving train, a legal presumption is raised that he did not stop, look and listen, which rebuts any presumption that he did so, and that there is in this case no doubt as to the contributory negligence on the part of William Hamilton, husband of the plaintiff. Having arrived at this conclusion it becomes unnecessary for us to consider the question of negligence on the part of the defendant or the question of whether the defendant or the Baltimore & Ohio Railroad Company would be liable, if either.

The motion of the defendant is therefore granted, and judgment is now entered for the defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Charles Biddle,* with him *C. Bradford Fraley,* for appellant.

*Arthur G. Dickson,* for appellee.

PER CURIAM, February 14, 1910:
The facts of the case and the law applicable thereto are very fully and clearly stated in the opinion of the learned trial judge, and the judgment is affirmed for the reasons given by him.

---

## Burton *v.* Miller, Appellant.

*Contract—Sale—Damages—Purchasing in the market—Substitution of goods in hand.*

Where a vendor refuses to deliver goods sold, the vendee may go into the market and purchase other goods, and charge the vendor with the difference; but he is not obliged to do this if he has on hand other goods of the same kind which he had previously purchased at a less price. In such a case he may substitute these goods for those which the vendor failed to deliver, and charge the latter with the difference between the price paid for them and the contract price of the goods not delivered.

Argued Jan. 6, 1910. Appeal, No. 188, Jan. T., 1909, by defendant, from judgment of C. P. No. 5, Phila. Co., June T., 1907, No. 93, on verdict for plaintiff in case of E. P. Burton & Company, to use of E. P. Burton Lumber Company, and E. P. Burton Lumber Company v. Frank Miller, trading as the Frank Miller Lumber Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Assumpsit for goods sold and delivered. Before MARTIN, P. J.

The court charged in part as follows:
In this case it appears from the evidence that the Burton Lumber Company for a certain price agreed to deliver to the