# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## Joyce *v.* Baltimore & Ohio Railroad Company, Appellant.

*Negligence—Railroads—Standing near tracks—Contributory negligence—Evidence—Province of court and jury.*

1. In an action against a railroad company to recover damages for personal injuries alleged to have been caused by an engine striking the plaintiff, the court must find as a matter of law that the plaintiff was guilty of contributory negligence, where it appears from her own testimony that in company with her sister she crossed the defendant's tracks at a public crossing, at a point where she could have seen the engine for two hundred and fifty feet, that she took her stand in a space less than seven feet wide between the farthest track of the railroad and nearest track of a street railway, and that while waiting for a street car and when she was not confused she was struck by the engine, although her sister escaped without being touched.

2. In order to justify the court in treating the question of contributory negligence as one of law, not only the facts but the inferences to be drawn from them must be free from doubt. On the other hand, when it is inconceivable that any two minds could rationally draw more than one conclusion from the established facts, then a decision contrary to such conclusion is merely capricious and cannot be sustained.

Argued Oct. 19, 1910. Appeal, No. 44, Oct. T., 1910, by defendant, from judgment of C. P. No. 4, Allegheny Co., Second Term, 1908, No. 40, on verdict for plaintiff in case of Anna M. Joyce v. The Baltimore & Ohio Rail-

road Company. Before FELL, C. J., MESTREZAT, POT-
TER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries. Be-
fore CARNAHAN, J.

The circumstances of the accident are stated in the
opinion of the Supreme Court.

Verdict and judgment for plaintiff for $9,000. Defend-
ant appealed.

*Error 'assigned* was in refusing binding instructions for
defendant.

*Owen S. Cecil,* with him *Johns McCleave,* for appel-
lant.—Plaintiff was negligent in assuming a position of
open and obvious danger and such negligence was the
proximate cause of her injury: Moore v. R. R. Co., 108
Pa. 349; McGeehan v. R. R. Co., 149 Pa. 188; Davidson
v. Ry. Co., 171 Pa. 522; Loughrey v. R. R. Co., 201 Pa.
297; Schmidt v. R. R. Co., 149 Pa. 357; Penman v. Mc-
Keesport, etc., Ry. Co., 201 Pa. 247; Gilmartin v. Tran-
sit Co., 186 Pa. 193; Warner v. Ry. Co., 141 Pa. 615.

*Thomas M. Marshall, Jr.,* with him *William H. Leahy,*
for appellee.—The case was for the jury: Bard v. Ry.
Co., 199 Pa. 94; Bickel v. R. R. Co., 217 Pa. 456; Muckin-
haupt v. Erie R. R. Co., 196 Pa. 213; Newman v. R. R.
Co., 203 Pa. 530; Holt v. R. R. Co., 206 Pa. 356.

OPINION BY MR. JUSTICE MOSCHZISKER, January 3,
1911:

By resolving all doubts and drawing all inferences in
favor of the plaintiff, the jury could have found the fol-
lowing material facts: The accident happened in the city
of Pittsburg on April 11, 1907 at about 7:45 A. M. The
morning was dark and foggy. The plaintiff and her sister
walked down Berwick street to its intersection with the
defendant's railroad on Second avenue. They desired

to reach a trolley line which was on the opposite side of
Second avenue and which approximately paralleled the
railroad and ran nearly at right angles to Berwick street.
Before crossing the railroad they stopped, looked and
listened, and not seeing or hearing any train they started
across the tracks for the purpose of boarding a trolley
car which they saw approaching Berwick street.    In
crossing they kept a lookout for trains and arrived on
the opposite side in safety.  They then stood in the space
between the last rail of the defendant's road and the first
rail of the trolley tracks, which space at this point was
about 6.90 feet wide.  After a few seconds they observed
a train only twenty feet away moving towards them, the
trolley car then being about equally distant and approach-
ing from the other direction.  The plaintiff was struck by
the train and injured.  Her sister was not touched or
harmed in any way.  The train and the trolley car passed
the women at about the same moment, the trolley hav-
ing a trailer on behind which stopped opposite where
they were standing.  The train ran beyond about 200
feet to the station, but when it stopped its rear end was
opposite the trolley trailer, and the plaintiff was picked
up between the two.  At the time of the accident the
plaintiff could see down the railroad in the direction from
which the train was coming as far as the next street,
which distance she fixed in an uncertain way at 250 feet,
while one of her witnesses put it at approximately 300
feet.  (The only witnesses who actually measured the
distance appeared for the defendant and testified to
500 feet.)  No whistle was sounded or bell rung to warn
the plaintiff of the approach of the train.  The only
definite testimony in the plaintiff's case on the subject
of speed was an estimate that the train was moving at
about fifteen miles an hour.

The plaintiff testified that after crossing the railroad
she looked carefully to see that no train was approaching,
and saw none; that she did not then consider the place
in which she was standing a dangerous one; and that

when she realized the train was coming she was not confused. In describing the accident, the plaintiff said: "I was hit by the train on the back, and I was thrown . . . . but it was the train that hit me, and my skirt was caught in the train; and it was all torn and filled with grease." The sister testified: "The engine hit her and knocked her against the car. . . . The skirt caught, because there is a hole in it and there was grease on it." Catherine Smith, the only other witness for the plaintiff who saw the accident, said: "The engine of the railroad train struck her, . . . . and knocked her against the car." The plaintiff established by a number of witnesses that Berwick street was a public crossing over the railroad; that it was usual for people to wait for and board the trolley cars at the place where she was hurt, and that this had been the general custom for at least twenty years. The plaintiff was about twenty-eight years of age at the time of the injury and her sister was then about nineteen. They lived in the neighborhood and were familiar with the locality where the accident occurred.

The statement avers: "Plaintiff alleges that she was standing at the place aforesaid, in readiness to board the said street car, she was suddenly confronted by the engine of the defendant company which was running at a high and negligent rate of speed, which sounded no bell and gave no warning of its approach. Which engine was negligently or carelessly operated by the defendant or its agents; and plaintiff did not realize that said engine was coming until it was almost upon her and within a short distance of where plaintiff was standing looking for the approaching street car . . . ., when she was suddenly struck by said engine. . . ." The statement also avers that the place where she stopped was the "regular stopping place for persons intending to board street cars," and the place where she crossed the tracks was "a regular railroad crossing, and has been used as such for twenty-five years or more by the citizens of that community, which fact was well known to the plaintiff company,

and it was a place requiring special care and caution on the part of defendant's employees. . . ." And further, "At the time the plaintiff was struck she was standing on Second avenue, a public highway, and the engine was running so fast that the suction or current of air caused by the swiftly moving train was so great that the plaintiff's dress was drawn in and caught by said engine, and she was partly drawn under the same and struck. . . ."

Defendant produced witnesses to show that the plaintiff was struck by the trolley car and not by the train; that it had given due warning by bells and whistles in approaching the crossing; that the plaintiff could have seen the train in ample time to avoid it had she been looking; and that the train was not running at more then six miles an hour. It proved a statement of the plaintiff, the making of which was not denied by her, to the effect that she saw the railroad train coming before she started to cross the tracks. The defendant contended that it was not guilty of any negligence and that the plaintiff was guilty of contributory negligence. The issues were submitted to the jury and they found against the defendant.

There are several specifications of error, but it is only necessary to pass upon the second to the effect that the court erred in not directing a verdict for the defendant. Under this assignment we will consider the question of the contributory negligence of the plaintiff.

In order to justify the court in treating the question of contributory negligence as one of law, not only the facts but the inferences to be drawn from them must be free from doubt. On the other hand, when it is inconceivable that any two minds could rationally draw more than one conclusion from the established facts, then a decision contrary to such conclusion is merely capricious and cannot be sustained. In this case the plaintiff succeeded in crossing the railroad without injury, and after reaching what she claimed to be a place of apparent safety was struck by a train. This space between the tracks, less than seven feet in width, may have been a

usual and customary place in which to wait for trolley cars; but any one occupying it was bound to act with the care required in such a situation and not to stand too near the railroad tracks. According to the plaintiff's testimony she could have seen the train at least 250 feet away, and probably farther, and yet she did not see it until it was within twenty feet of her. She testified in positive terms that she was not confused. Her sister who was standing beside her was not affected or injured in any manner. Neither the plaintiff nor any of her witnesses gave evidence from which the inference could be drawn "that the suction or current of air" created by the passing train caused her dress to be caught and thus led to her injuries; on the contrary they state that she was hit directly by the train. If the story told by the plaintiff and her witnesses is to be accepted, it is apparent that she came to grief by standing too close to the railroad tracks; and it is likewise clear that had she acted with due care she would have escaped injury, as did her sister. A nonsuit could have been entered; that having been refused, binding instructions should have been given for the defendant.

The second assignment of error is sustained; the judgment is reversed and is here entered for the defendant.