## Reid, Appellant, v. Pennsylvania Railroad Company.

Argued October 15, 1935. Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*William Charles Brown,* for appellant.

*Philip Price,* with him *Barnes, Biddle & Myers,* for appellee.

OPINION BY JAMES, J., January 31, 1936:

Plaintiff appeals from judgment non obstante veredicto for defendant granted by the court below after a verdict in his favor in an action of trespass for personal injuries suffered by being crushed between a freight car and a truck. The sole question involved is whether plaintiff was guilty of contributory negligence.

In viewing the question of plaintiff's contributory negligence, we must review the testimony in a light most favorable to him. Viewed in this light, the testimony is as follows: On February 21, 1931, at about 6 A. M., the plaintiff, an employee of a dairy company, drove a truck through Entrance No. 1, into the freight yard of the Pennsylvania Railroad on the south side of Oregon Avenue in the City of Philadelphia, for the purpose of delivering two cans of milk each weighing about 100 pounds, to the Savarin Restaurant located in the Pennsylvania Railroad produce terminal building in said freight yard just west of the loading platform. Plaintiff had been making deliveries of milk daily for about three years prior to the date of the accident and each delivery was made much in the same manner as on the morning of the accident; occasionally making

deliveries to a similar loading platform on the westerly side of the terminal building through a gate known as Entrance No. 2. On this morning, plaintiff drove his truck into the driveway through Entrance No. 1, which is east of the terminal building. To the east of this entrance into the freight yard, there is a parking space eighteen feet wide and to the west of the entrance, there is a driveway about thirty feet wide in which are sunk two sets of siding tracks, designated as Tracks Nos. 1 and 2, running parallel with the loading platform, and at the end of each siding track is a large bumper. Between the bumpers and the fence, fronting the terminal yard, is a space about fourteen feet in width which leads to a flight of steps from the ground to the platform. The entire driveway is paved with asphalt and the top of the rails is on a level with the paving. Plaintiff backed his truck to the loading platform which runs along the east side of the terminal building so that a part of his truck was across Track No. 2, the track nearest the platform, and about three or four feet from the side of his parked truck was the rear end of a freight car, which was the last car of a draft of freight cars, the end of which he was unable to see on account of darkness. Between the rear end of the freight car and the bumper was a space of eighteen feet. This draft of freight cars was stationary when the plaintiff entered the yard, and remained so for at least ten or fifteen minutes before the accident happened. It was dark when plaintiff backed his truck to the loading platform and he neither saw nor heard any evidence of an engine attached to the draft of cars. Plaintiff unloaded one 100-pound can of milk from the side of his truck nearest the freight car, carried it to the loading platform and rolled it a distance of about thirty-five yards into the restaurant. He then returned to his truck to unload the second can of milk, and when in the act of lifting the can from the

side of his truck and without any notice being given to him, the draft of freight cars was moved backwards towards him squeezing him between the rear end of the last freight car and the side of his truck. The cars were moved but a short distance, only until the pushing "cocked the truck upon one side." During the time the plaintiff had been making deliveries to the Savarin Restaurant, and whenever he saw that an engine was attached to the freight cars, he never backed into the platform; when he was backed against the platform, he was requested by defendant's employees to leave temporarily while they were making a movement and when the movement was completed, he would back against the platform; if a movement was intended, the employees would not permit him to back to the platform.

Plaintiff, undoubtedly, had the privilege to be in the yard, and it follows that it was the duty of the defendant's employees to exercise reasonable care to avoid injury to him; but it was still the duty of plaintiff to exercise reasonable care himself. As this record stands we must assume that the defendant was guilty of negligence, but we cannot avoid the conclusion that plaintiff was also guilty of contributory negligence. Plaintiff must have known, that without first determining whether an engine was attached to the draft of cars, he was placing himself in a position that the slightest movement of the train would have caused serious injury to him. He had no more right to assume that defendant's employees (who did not know of his presence) would warn him of an intended movement, than they had the right to assume that plaintiff would not risk the apparent danger of his position. Plaintiff concededly had the right to be upon the premises, but his course was not one of necessity, as he had several courses to adopt which would have avoided the injury. We would not hold that he had to withdraw his truck

from Entrance No. 1 and go to Entrance No. 2, but he could have stopped his truck upon Track No. 1, just east of Track No. 2, upon which the draft of freight cars was located, just as the iceman did on the morning in question, or could have stopped his truck near the bumpers between which point and the fence there was a distance of about fourteen feet, which was ample room for him to take his milk cans. That he had not previously adopted this course, was no excuse for his failure on the morning of the accident. The convenience of backing the truck against the platform, which merely relieved the plaintiff from carrying the cans a further distance, did not justify him in placing himself in a position of known danger. If instead of backing his truck to the platform, he had driven to the platform, the unloading door of his truck would have been away from the freight car and he would have had ample room to avoid the injury. Had the plaintiff adopted any of these alternatives, the accident could have been avoided.

Where a person, having a choice of two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, such person is guilty of contributory negligence and cannot recover: Kaczynski v. Pittsburgh, 309 Pa. 211, 163 A. 513; Levitt et al. v. B/G Sandwich Shops, Inc., 294 Pa. 291, 144 A. 71.

In the case of Muth v. P. R. R. Co., 100 Pa. Superior Ct. 63, relied upon by appellant as controlling, we find the facts so dissimilar as to be of little value in deciding the question herein involved. Briefly stated, we held that in passing through a railroad yard, a driver of a truck, crossing a series of tracks where there is traffic, is not required to stop before entering each track, unless there is a reasonable apprehension that there would be a movement.

Under the testimony, plaintiff having chosen the risk of a dangerous position, when safer ways were clearly

42

open, was guilty of contributory negligence, and the court below properly entered judgment non obstante veredicto.

Judgment affirmed.