## Vasilios *v.* Pennsylvania Railroad Company, Appellant.

Argued October 3, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Theodore Voorhees,* with him *Harrison H. Clement* and *Barnes, Myers & Price,* for appellant.

*Maurice E. Cohen,* with him *Mareline McElwee,* for appellee.

OPINION BY BALDRIGE, J., December 19, 1939:

Plaintiff brought this action to recover damages for injuries he received when struck by the defendant's locomotive at Richmond and Cumberland Streets in Philadelphia. The case was tried in the municipal court by GLASS, J., sitting without a jury, who found in favor of the plaintiff in the sum of $300. The defendant took an appeal after its motions for a new trial and judgment n. o. v. were dismissed.

On December 2, 1936, at 5:45 p. m., the plaintiff alighted from a trolley car north bound on Richmond Street about 15 feet short of the regular trolley stop at Cumberland Street at a point where there is no sidewalk along Richmond Street. Automobile traffic had come to a stop to permit trolley passengers to alight. The plaintiff desired to cross over to the opposite or westerly side of Richmond Street, but due to traffic conditions he was unable to do so at once and therefore he walked southeastwardly to await the passing of the traffic. His passageway directly east was blocked by a stalled automobile. Approximately 20 feet east of, and running parallel to, the trolley line were railroad tracks. The plaintiff said he stopped

within one foot of the railroad tracks and remained there for over a minute awaiting an opportunity to cross Richmond Street. He testified that when he went back to the train tracks "there was nothing danger, and I turned my back and watch the machines pass ...... When I was standing over there I was watching the machines pass by me, and I was looking around maybe a train comes or the machines."

A draft of 13 freight cars, headed by a locomotive proceeding south, tender first, had come to a standstill at a point approximately 25 feet from where the plaintiff was standing as the stalled automobile to which we have referred was obstructing the tracks. When the car was removed the train proceeded south at a rate estimated by the train conductor as 2 miles an hour. In any event, it was going very slowly as it had gone only a short distance after starting when the plaintiff was struck by the engine and thrown to the ground.

The plaintiff and his witnesses testified there were no lights displayed on the tender, no warning given by bell or whistle, and no employee of the defendant preceded the tender, although this testimony was contradicted by witnesses called by the defendant. At the time of the accident rain was falling and the atmosphere was foggy, making visibility poor, but that imposed upon plaintiff a greater degree of care as he was fully aware that he was standing on the edge of a track: *Lunzer v. Pittsburgh & L. E. R. Co.*, 296 Pa. 393, 145 A. 907. He was entirely familiar with this immediate location. He had been there many times previously and there was sufficient visibility for him to see that he was standing within a foot of the tracks. His witnesses testified they had no difficulty in seeing him when he was about 25 feet away, and all, except plaintiff, saw the locomotive.

Accepting the testimony of the plaintiff in the most favorable light, we are convinced that he was guilty of contributory negligence, as it is inconceivable that if

he had exercised the care required of him he would not have seen and heard the engine with its train of freight cars when it began to move but a short distance away from him at a speed that gave him ample opportunity to step away from the track. It is a matter of common knowledge that when an engine attached to freight cars starts it makes a noise that can be heard a considerable distance. It is futile for plaintiff to say that he looked and listened if in spite of what he could have seen and heard he remained in an obviously dangerous place. As was said in *Joyce v. B. & O. R. R. Co.*, 230 Pa. 1, 6, 79 A. 171: "If the story told by the plaintiff and her witnesses is to be accepted, it is apparent that she came to grief by standing too close to the railroad tracks; and it is likewise clear that had she acted with due care she would have escaped injury, as did her sister."

Harry Norton, one of plaintiff's witnesses, who testified that he saw him struck, gave the only testimony as to the amount of free space between the tracks and the passing automobiles at the point where plaintiff stood, which he fixed at about 5 feet, so that if plaintiff had stepped forward a foot or foot and a half he would have escaped injury.

In *Sipko v. Penna. R. R. Co.*, 332 Pa. 106, 2 A. 2d 717, the plaintiff was struck by defendant's train as he was standing close to a track laid in a roadway talking to a friend. There was no sidewalk and pedestrians were obliged to walk in the street. The court held plaintiff guilty of contributory negligence in standing an appreciable length of time with his back to the approaching danger, thus being inattentive to his surroundings and devoid of caution; that if he had looked even casually he could not have failed to observe the approaching cars in time to step aside and avoid all harm.

In *Fidelity Trust Co. v. Penna. R. R. Co.*, 326 Pa. 195, 191 A. 609, the decedent was struck when walking

over a grade crossing by the tender of a locomotive that was backing very slowly along a spur track. There was testimony that no warning was given of the locomotive's approach. There, the noise from factories made inaudible the sound of the operation of the locomotive and fog obscured vision beyond 50 feet. The court said (p. 197): "An alert man could not have been struck under such circumstances. If decedent had seen the locomotive when he should have, when it came within his admitted range of vision, he could easily have avoided it by stepping forward or backward—two steps would have cleared the track. The physical facts prove beyond a doubt that he did not exercise any care in crossing the track, did not look for a train, did not see it at all until he was struck, and was injured by his own utter lack of the vigilance required by the circumstances. His own negligence caused the accident, and now bars recovery."

The plaintiff argues that this was a case of a sudden emergency. But we cannot accept that contention. He was in peril due only to his being oblivious of the apparent danger of the approaching train. There was no evidence that the automobile traffic in the cartway would run over him with a clearance of 5 feet between the tracks and the moving machines. Nor is there any evidence that he feared they would run him down, as plaintiff himself testified: "When I went back to the train tracks there, there was nothing danger, and I turned my back and watch the machines pass." It may possibly have been an error of judgment on his part, but one cannot escape the conclusion, in considering all the circumstances, that, in fact, he deliberately placed himself in a dangerous position and then failed to exercise the necessary precaution to safeguard himself. No sufficient reason appears of record to explain plaintiff's going to the point he did when he could have proceeded, notwithstanding the presence of the stalled automobile, in a northeasterly direction a distance of 15 feet where

he would have been on a sidewalk and perfectly safe: *Lieberman v. Pittsburgh Rys. Co.*, 305 Pa. 412, 157 A. 905; *Casey v. Siciliano*, 310 Pa. 238, 165 A. 1; *Stewart v. Phila. R. T. Co.*, 103 Pa. Superior Ct. 366, 157 A. 37; *Reid v. Penna. R. R. Co.*, 121 Pa. Superior Ct. 37, 182 A. 760.

Judgment of the learned court below is reversed, and now entered for defendant.