## WITIAK v. DELAWARE & HUDSON R. R. CORPORATION.

### No. 8989.

Circuit Court of Appeals, Third Circuit.
Argued Dec. 7, 1945.
Decided Jan. 29, 1946.

Leon M. Levy, of Scranton, Pa. (Everett A. Rosser and Thomas F. Hanahue, both of Scranton, Pa., on the brief), for appellant.

Paul Bedford, of Wilkes-Barre, Pa. (Hon. Joseph Rosch, of Albany, N. Y., and Thomas L. Ennis, of New York City, on the brief), for appellee.

Before BIGGS, GOODRICH and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This matter involves a railroad grade crossing accident wherein plaintiff's decedent, a pedestrian, was "sidestruck" by some part of a train of the defendant, receiving such injuries that she died the same day. The District Court on motion dismissed the complaint on the ground of the decedent's contributory negligence. 59 F.Supp. 1009.

The complaint sets up the jurisdictional facts with appropriate allegations that the defendant is and was on the day of the accident, a carrier for hire and that it maintained a described public grade crossing. It is alleged that it was the duty of the defendant to protect the public using the crossing by giving notice of the approach of its trains and by the maintenance and operation of gates. As to

the latter, the duty of the gateman in charge is asserted to have been "to lower the gates at such times as trains were approaching, thus according and furnishing a barrier which prevented the public from entering the crossing and proceeding across the tracks at a time when trains were approaching in the proximity thereof, thereby attempting to prevent a condition dangerous to pedestrian and vehicular travel." Paragraph 6 states that the defendant failed in that duty because the gates at the time of the accident "only extended partially across the highway and left exposed and unprotected *a certain space approximately four feet in width at the Southerly end of the gates situate at a point where the sidewalk on the said Lackawanna Street met the railroad tracks of the defendant.*" (Emphasis ours.) Paragraph 7 sets out that the decedent on the morning of the accident was walking in an easterly direction on the said Lackawanna Street and "had stopped at the point hereinbefore described, where the sidewalk met the railroad tracks of the defendant company. The gates were down and the decedent stood at the walk at the point which was unprotected and open, owing to the inadequacy in width of the defendant's gates. The decedent at the time stood at a point customarily used and occupied by persons of Olyphant Borough and vicinity who had occasion to travel East on Lackawanna Street, at times when the gates were down and trains were expected to pass at that point." The next paragraph recites that: "The employees of the defendant were aware of this practice and custom and it was their duty to anticipate the presence at the said point of persons using the said highway and it was the duty of the defendant through its employees and agents to have its engines and trains under such special control that they could operate them without danger or harm to persons standing in the proximity of the crossing." It is alleged that the defendant disregarded its duty and drove a southbound train at an excessive and improper speed with no warning by whistle or bell and "that by reason thereof the decedent was sidestruck by the said train." Certain detailed *compensatory* damages are sought and then the ad damnum paragraph states that the plaintiff claims damages "*to compensate* for the pain and suffering sustained by the decedent; *to pay for* the hospital bills and funeral expenses incurred and *to compensate* for the loss of future earnings * * *." (Emphasis ours.)

At the time of the accident decedent was standing in the space described in Paragraph 6 of the complaint. A fair reading of the somewhat inept language of Paragraphs 6 and 7 indicates that space to have extended beyond the tip of the lowered west gate four feet further south and from the imaginary extension of the line of the gate, east to somewhere near the most westerly rail of tracks. Reference in the complaint to the space mentioned in Paragraph 6 as a point does not tend to clarify the situation. However, neither the Court not the defendant were at all confused thereby. The Trial Judge's opinion outlining the facts as they appear in the complaint found one of these to be "that she stood near the track * * *." The defendant's brief in discussing the averments of defendant's negligence as shown in the complaint states that among other things the complaint alleges decedent at the time she was struck was "standing near the track beyond the end of the gate". No question of any other interpretation of the phraseology of the complaint ever arose until at the oral argument of this appeal. A construction which placed the decedent at or upon the railroad tracks would be unjustified in view of the plain intendment of the language and entirely contrary to the theory upon which the matter was presented to and decided by the District Court. Admittedly this is not a case where the decedent was attempting to walk across the railroad tracks. Paragraph 7 of the complaint referring to the "space" of Paragraph 6 says that decedent "had stopped at the point hereinbefore described, * * *." Plaintiff should have the opportunity of proving just what the space was, its dimensions and if he can, just where in the space the decedent was standing. Certainly there is enough in the complaint to show that decedent's position was in such space and not at or on the defendant's tracks.

Pennsylvania law, which controls the substantive question of the contributory negligence of the deceased, strongly supports the ruling of the Trial Court. Evelyn Witiak is presumed to have used due care but that presumption

is destroyed by the facts which show that around noon of the particular day with no suggestion of unfavorable weather conditions, she, as said in Paragraph 7 of the complaint, " * * * when the gates were down and trains were expected to pass at that point" deliberately walked into and stopped somewhere in the space above referred to. Hamilton v. Central Railroad of New Jersey, 227 Pa. 137, 75 A. 1058.

Cleary v. Philadelphia & Reading Railroad Co., 140 Pa. 19, 21 A. 242, also concerned a pedestrian grade crossing accident. There, too, the gates were down and they did not extend over the footway. The pedestrian in that case, as the Court says at page 21 of 140 Pa., at page 242 of 21 A. " * * * knew that the lowering of the gates was a danger signal; that it signified the occupation of the tracks by passing trains." The Court held that crossing gates were not "intended merely to warn vehicles. On the contrary, they are equally a warning to foot-passengers; the principal difference being that when down a vehicle cannot pass, while a foot-passenger, if sufficiently foolhardy, may do so." In Sheehan v. Philadelphia & Reading Railroad Co., 166 Pa. 354, at page 356, 31 A. 120, the Court said:

"Here a train was approaching, the gate was down, as it should be, and the plaintiff was thereby warned of danger. He paid no attention to the warning, and received his injury as a direct consequence of his own negligence." To the same effect, Gress v. Philadelphia & Reading Railroad Co., 228 Pa. 482, 77 A. 810, 32 L.R.A.,N.S., 409, 21 Ann.Cas. 142.

As seen, the plaintiff asserts that Evelyn Witiak at the time she was struck was standing " * * * at a point customarily used and occupied by persons of Olyphant Borough and vicinity, who had occasion to travel East on Lackawanna Street, at times when the gates were down and trains were expected to pass at that point." The facts in Joyce v. Baltimore & Ohio Railroad Co., 230 Pa. 1, 79 A. 171, were quite similar to the instant situation with the allegations of the complaint in that cause much the same as those in the one under discussion. The Court said, 230 Pa. at pages 5 and 6, 79

A. at page 172: "This space between the tracks, less than 7 feet in width, may have been a usual and customary place in which to wait for trolley cars; but any one occupying it was bound to act with the care required in such a situation and not to stand too near the railroad tracks. * * * it is apparent that she came to grief by standing too close to the railroad tracks; and it is likewise clear that had she acted with due care she would have escaped injury, as did her sister. A nonsuit could have been entered. That having been refused, binding instructions should have been given for the defendant."

■ The Joyce opinion is directly contrary to and dispositive of appellant's contention that because decedent followed a general custom in walking past the closed gate and standing in the space near the tracks she was excused from the care ordinarily required in such circumstances.

■ Appellant strongly urges that wanton negligence on the part of the defendant would eliminate the question of decedent's contributory negligence. The principle so stressed is correctly stated. Kasanovich, Adm'x v. George et al., Trustees, 348 Pa. 199, 34 A.2d 523; Misorski v. Pennsylvania Railroad Co., 348 Pa. 204, 34 A.2d 526; Restatement of Torts, Section 482(1). The difficulty at this time is that under the present complaint the question of defendant's reckless disregard for the decedent's safety is not raised. The proposition was never suggested to or passed upon by the District Court but entirely aside from that, the whole rationale of the complaint is one of simple negligence for specified compensatory damages.

This litigation is founded on a pitiful accident and plaintiff should have his full day in Court. The idea of wanton misconduct now so seriously pressed is new to the case. It is not cognizable under the complaint as drawn. However, the statute of limitations has not yet expired. If appellant moves promptly there is nothing to prevent him, should he so desire, from starting another suit based on the alleged wanton negligence of the defendant.

Affirmed.