NEW ENGLAND PRETZEL COMPANY *vs.*
HOWARD S. PALMER *et al., Trs.*

JUNE 17, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is an action for negligence which plaintiff alleges caused a collision between its tractor trailer and three freight cars of the New York, New Haven and Hartford Railroad Company in its freight yard in Pawtucket in this state. Defendants are trustees of the railroad and they have brought the case here on a bill of exceptions. On our view of the evidence only the exception to the superior court's denial of their motion for a directed verdict need be considered.

The collision occurred shortly before 5 p.m. on October 16, 1945 while plaintiff's tractor trailer was parked in the defendants' freight yard across the roadway between tracks

14 and 16 in such a manner that the right front corner of the bumper was slightly overhanging the right of way of track 14 not more than ten inches. Plaintiff's driver testified that he had parked it that way because he desired to back the tractor trailer up to the door of a freight car on track 16 from which he was transferring a shipment of bagged corn. He further stated that he "jacknifed" the tractor as much as he could. However, he admitted that it was not necessary to back the tractor trailer at a right angle to the freight car in order to transfer the bags of corn to the trailer. It could have been accomplished by backing the trailer so that no part of it would overhang the right of way of track 14, but the driver testified that it would not then be as easy and convenient to unload the freight car as it was in the position in which he had placed the tractor trailer. In other words, it is clear that he deliberately chose to place it in a position of danger merely to facilitate the work of unloading, and not because of any necessity or emergency.

While the driver and his assistant were in the freight car on track 16 unloading the corn three freight cars coupled together were "kicked" down track 14 by a switching engine which was several hundred feet up the track to the west in charge of an engineer and a conductor. As the cars were running free down the track the head car collided with the right front corner of the tractor and damaged it and the trailer seriously. Plaintiff's driver and his assistant testified that they did not know that switching operations were being conducted on track 14 until they heard the crash of the collision and saw the freight cars against the tractor. Defendants' engineer and conductor testified that they did not know that track 14 was obstructed and that they did not see the tractor before the freight cars were released and "kicked" down the track. Two other members of the switching crew testified to the same effect.

Plaintiff's driver and his assistant testified that a short time before the collision several men with soiled faces and

dressed in what the witnesses considered were workmen's clothes usually worn by railroad men came over and jokingly asked for some pretzels. They did not testify where those men were at the time in relation to the tractor or whether the overhanging bumper could have been seen by them. Neither witness testified that the men were members of the crew that switched the three freight cars down track 14. However, each did testify that before the accident they had seen them on a switching engine further over in the yard. Each also testified that those men did not warn them that there was going to be any switching on track 14.

The conductor, the engineer and two other members of the crew that performed the switching operations in question denied that they talked to the plaintiff's driver or assistant on the day of the accident or that they had any knowledge of the position of the tractor obstructing track 14. Neither the plaintiff's driver nor his assistant was able to identify those witnesses as the same men who had talked to them before the accident. Plaintiff nevertheless contended that there was evidence from which the jury could infer that they were the same men; that they knew or in the exercise of due care should have known that the tractor was in a position of peril by reason of the switching about to take place on track 14; and that it was their duty to warn plaintiff's servants of such peril. Plaintiff further claims that the negligence of those men was properly attributable to defendants' servants who actually released the freight cars on that track and constituted the proximate cause of the collision.

The trial justice did not wholly agree with those contentions. He held that the driver was negligent in placing the tractor trailer in a place of danger and that if there was no more to the plaintiff's case than that he would take it from the jury. However, he declined to do so because he felt that the testimony concerning the presence in the yard of the men who talked to plaintiff's witnesses raised

a question of fact whether shortly before the accident the railroad had constructive notice that the tractor was in a position of peril obstructing the right of way of track 14. And he further held that if the jury so found then a further question would arise for their determination whether on the evidence before them the railroad had the last clear chance to avoid the accident. For those reasons he denied defendants' motion for a directed verdict.

The decisive question here on defendants' exception to that ruling is whether the evidence is such that the doctrine of the last clear chance can be properly invoked. That doctrine has long been recognized in this state but there have been comparatively few controversies in this court relative to its application in a given case. *Vizacchero* v. *Rhode Island Co.*, 26 R. I. 392; *Malfetano* v. *United Electric Rys.*, 58 R. I. 129. It is clear that in those cases where the occasion has arisen for a discussion of the limits of the doctrine the court has held it applicable only where the evidence disclosed that the plaintiff had negligently placed himself or his property in a position of peril; that defendant thereafter had become aware or in the exercise of due care ought to have become aware of plaintiff's peril and his lack of comprehension of it or apparent inability to extricate himself from it; that the defendant if he had been in the exercise of due care had a reasonable opportunity thereafter to avoid injuring the plaintiff; and that defendant failed to exercise such care. *Underwood* v. *Old Colony Street Ry.*, 33 R. I. 319; *Morrison* v. *Rhode Island Co.*, 41 R. I. 474.

There has long been a conflict of authority in American jurisdictions on whether it must be shown that defendant had actual knowledge of the plaintiff's peril. Some hold that unless the evidence shows that the defendant had such knowedge the doctrine cannot be invoked. *Katsikas* v. *Manchester Street Ry.*, 90 N. H. 21; *Emmett* v. *Alabama Great Southern Ry.*, 226 Ala. 310; *Snyder* v. *New York Central R. R.*, 101 Ind. App. 258; *Lynch* v. *Des Moines Ry.*,

215 Iowa 1119; *Cleveland Ry.* v. *Masterson,* 126 Ohio St. 42. But the great weight of authority is clearly the other way. See Note 92 A.L.R. 47; Shearman and Redfield on Negligence (6th ed.) §99. However, there can be no question that actual knowledge of plaintiff's peril is a prerequisite for the application of the doctrine in cases where there is no duty on a railroad to keep a lookout for persons not rightfully upon its tracks such as trespassers and the like.

Even in Vermont where the necessity of proving the defendant's actual knowledge of plaintiff's peril has been strongly repudiated in a series of cases applying the doctrine of the last clear chance the court nevertheless, in *Dent* v. *Bellows Falls and Saxtons River Street Ry.,* 95 Vt. 523, 530, stated: "The extension of the doctrine to perils not actually discovered is fully justified when the situation is such that the defendant *owes the duty of looking out for danger,* as in the case of persons crossing a railroad at a highway crossing at grade. Our cases in which the rule has been formulated are all of this character. It should not be understood as applying in the *absence of a duty to maintain a lookout,* as in case of persons on a railroad track where there is no reason to anticipate their presence. This is the necessary inference from the very statement of the rule." (italics ours)

In Maine which also follows the weight of authority to the effect that evidence of defendant's actual knowledge of plaintiff's peril is not required it was clearly pointed out that this was so only in cases where defendant owed a duty to keep watch for and use reasonable care not to injure a plaintiff lawfully traveling on the public highway. *Dyer* v. *Cumberland County Power & Light Co.,* 120 Me. 411. And to illustrate the limits of the rule the court quoted the following text apparently with approval: "Where the defendant owes no duty to the plaintiff as in the case of trespassers there may be sound reasons for adhering to the rule of actual knowledge. Shearman and Redfield on Neg., 5th Ed., Sec. 484."

In Missouri where the doctrine of the last clear chance has been liberally applied and called "the humanitarian doctrine" it has nevertheless been held that the doctrine is applicable in cases of discoverable peril only where there is an obligation on the defendant to know of such imminent peril under a continuous lookout duty at places and under circumstances where to look is to see and know. *Partney* v. *Agers*, 238 Mo. App. 764. The court cited *State ex rel* v. *Shain*, 344 Mo. 404, where it was declared that the rule of *discoverable peril* as distinguished from *actually discovered peril* was limited in its application to public places or places in their nature public because frequented by many persons. And in Virginia it was pointedly said that the doctrine would not be supported by evidence of defendant's failure to discover plaintiff's peril unless there was a duty to discover it. *Gunter's Adm'r* v. *Southern Ry.* 126 Va. 565.

From our examination of many cases on this point we are of the opinion that there is no authority anywhere holding that the doctrine of the last clear chance is applicable in the absence of evidence of defendant's actual discovery of plaintiff's peril where there was no duty on defendant's part to keep a lookout so as to avoid injuring persons or property that might become involved in such peril. All the cases holding defendants accountable for *discoverable* peril which we have examined appear to us on the facts stated therein to be expressly or implicitly predicated on an antecedent duty of the defendants to discover such peril. A rather exhaustive note in 92 A.L.R. 47 is instructive on this point. Where there is no such duty and the evidence is uncontradicted that the plaintiff's peril was not actually discovered, we are of the opinion that there is no room for the application of the doctrine of the last clear chance.

In the case at bar there is no evidence that the engineer or the conductor or any of the crew who released the three freight cars and sent them down track 14 actually saw plaintiff's tractor trailer obstructing that track. And they were not charged with the duty to maintain a lookout to

see that such track was clear before the cars were "kicked" down. Plaintiff was an invitee of defendants but it exceeded its invitation and became a trespasser or at least a mere licensee when its driver deliberately placed the tractor trailer in a position of danger in overhanging the right of way of track 14. On his own testimony there was no emergency necessitating such use of the freight yard and he voluntarily chose to incur such danger solely because his work of unloading the cargo of corn was thereby rendered easier and more convenient. In a somewhat similar situation the driver of a dairy truck who was injured in a railroad yard was denied recovery in *Reid* v. *Pennsylvania R. R.,* 121 Pa. Super. 37, and the question of defendant's last clear chance to avoid the accident did not arise. And where in another case in the same jurisdiction an invitee exceeded his invitation and exposed himself to peril it was held that the invitor owed no duty to warn of such peril if he did not actually see the invitee in that position, and in such a circumstance the doctrine of last clear chance was inapplicable as defendant was under no duty to anticipate that the plaintiff would expose himself to danger. *Curt* v. *Ziman,* 140 Pa. Super. 25.

A railroad owes no duty to a trespasser or bare licensee except after discovering his peril. *Erenkrantz* v. *Palmer,* 69 R. I. 478; *Boday* v. *N. Y., N. H. & H. R. R.,* 53 R. I. 207. This is a generally accepted rule, and the only qualification to it, if it may be called a qualification, is that as to such persons on their property a railroad has only a minimal duty not to willfully or wantonly injure them. If such a person is not seen, although he could have been seen had the railroad maintained a lookout, there can be no recovery because a railroad is under no duty to keep a lookout for trespassers. Their probable presence on the tracks is not such a circumstance which the law requires a railroad to anticipate and reasonably guard against. *Chenery* v. *Fitchburg R. R.,* 160 Mass. 211. Of course travelers injured

at railroad crossings on public highways are not in the category of trespassers and bare licensees.

In *Barry* v. *Southern Pacific Co.,* 64 Ariz. 116, plaintiff, while lying asleep on a railroad track, was injured by a tank car being pushed by an engine. On the front end of the tank car was a crew of four men with lights casting a glow of about 50 or 60 feet ahead but they did not see the plaintiff until the car was about to run over him. Holding plaintiff a trespasser, the court said that the conduct of the crew in failing to observe him was neither wanton nor willful as his presence on the track was not reasonably to be anticipated by them. The court cited 2 Restatement of the Law, Torts, §479, to the effect that the owner or possessor of land is entitled to ignore the probability that trespassers may intrude thereon and is under no duty to be on the alert to discover their presence.

In *James* v. *Thompson,* La., 35 So.2d 146, plaintiff was knocked down and injured in defendant's freight yard by a coal car which was being backed by a locomotive to the freight depot. Many people were in the yard at the time unloading potatoes and plaintiff claimed that was a reason for defendants to maintain a lookout to warn people of the danger of trains backing on the tracks. Plaintiff was hit while crossing the track on a path which was used as a short cut to the business section of the town, and the court considered he was either a trespasser or a bare licensee and as such could not recover except for the willful or wanton act of the defendant. His peril not being actually discovered by defendant and he being under no duty to discover it the court held that the last clear chance doctrine did not apply.

Licensees, like trespassers, on a railroad are bound by existing conditions and cannot require the railroad to protect them from dangers as obvious to them as to the railroad. Against the probable presence of a trespasser or bare licensee, the railroad is not bound to take special precautions but may run its trains in the usual way unless

circumstances themselves give warning of such presence. 44 Am. Jur. 642, §425.

In the case at bar it was not the duty of the engineer and the conductor who released the three freight cars down track 14 to anticipate that plaintiff's driver would place its tractor trailer in a position of danger overhanging that track. Nor was it their duty to take reasonable means to guard against such a probability. Assuming without deciding that it could be reasonably inferred from the testimony of plaintiff's witnesses that the men who talked to them sometime before the accident were employees of the railroad engaged in the switching operation by which the freight cars were released down track 14, there is no evidence from which it could be reasonably inferred that they saw the tractor trailer slightly overhanging the right of way of track 14. In the absence of such an inference the jury could not reasonably find that the railroad, through its servants and agents, had actual knowledge of the plaintiff's peril and hence could not find that it willfully or wantonly caused the damage to plaintiff's tractor trailer.

On a review of the evidence most favorable to the plaintiff against whom the motion for a directed verdict was made, it appears to us that a jury could not reasonably find that the defendants were guilty of any negligence that was the sole proximate cause of the damage to plaintiff's property. On the contrary, the only reasonable view from the evidence is that the proximate cause of such damage was the contributory negligence of the plaintiff's driver in deliberately placing the tractor trailer in a position of danger and permitting it to remain there unattended without regard to the consequences. Being a bare licensee, plaintiff had the burden of proving that the damage to its tractor trailer was the result of a willful or wanton act on the part of defendants or their servants. And, as we observed above, there is no evidence from which the jury could reasonably infer that defendants' engineer or conductor or any other member of the switching crew actually saw the tractor

trailer in a place of danger before the freight cars were released down track 14. Hence the jury could not reasonably find that defendants were guilty of wantonness or willfulness. This being so defendants' motion for a directed verdict should have been granted.

The defendants' exception to the denial of such motion is sustained. On July 6, 1949 the plaintiff may appear before this court to show cause, if any it has, why the case should not be remitted to the superior court with direction to enter judgment for the defendants.

*Martin M. Zucker*, for plaintiff.

*William E. Boyle, William J. Carlos*, for defendants.