230 A.2d 846.

JOHN MAJOR *vs.* JOSEPH N. GRIEG.

GLADYS I. MAJOR *vs.* JOSEPH N. GRIEG.

JUNE 21, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. These two actions of trespass on the case for negligence were brought by a husband and his wife for injuries to the wife and consequential damages to the husband. While crossing a public highway in the city of Providence, the wife was injured by a motor vehicle owned and operated by the defendant.

The cases were consolidated for trial and heard together before a justice of the superior court sitting with a jury and resulted in a verdict for the defendant in each case. After the trial justice denied plaintiffs' motions for a new trial, they filed notices to prosecute bills of exceptions.[1] Although

---

[1]These cases were commenced, heard and concluded in the superior court prior to January 10, 1966, the effective date of the new rules of civil procedure of the superior court, which abolished the need for formal exceptions in civil actions in that court. (see rule 46). In the circumstances we follow the procedure and terminology in effect prior to January 10, 1966.

their bills of exceptions contain numerous exceptions, they have briefed and argued only three, one to the refusal of the trial justice to instruct the jury on the doctrine of the last clear chance and the other two to certain evidentiary rulings. These are the only exceptions which we shall consider, since, under our rule, exceptions neither briefed nor argued are deemed to be waived. *Labbe* v. *Hill Brothers, Inc.,* 97 R. I. 269, 197 A.2d 305. Inasmuch as liability in both cases is dependent upon our decision in the wife's case, we shall, unless otherwise stated, discuss only her case, with the understanding that our decision will apply with equal force to both.

The question raised by plaintiff's exception — to the refusal of the trial justice to grant her request to instruct the jury on the doctrine of the last clear chance — requires a discussion of the evidence describing the accident which resulted in plaintiff's injuries. Only by examining such evidence can we determine whether that doctrine is applicable to the facts of this case. There is no dispute between the parties as to the conditions precedent to the application of the doctrine; they agree that the doctrine as set forth in *New England Pretzel Co.* v. *Palmer*, 75 R. I. 387, 67 A.2d 39, which contains an excellent discussion of the problem, is the rule in this state. At page 391, 67 A.2d at 42, Mr. Justice Condon, writing for a unanimous court, stated the doctrine in the following language:

"* * * That doctrine has long been recognized in this state but there have been comparatively few controversies in this court relative to its application in a given case. * *. * It is clear that in those cases where the occasion has arisen for a discussion of the limits of the doctrine the court has held it applicable only where the evidence disclosed that the plaintiff had negligently placed himself or his property in a position of peril; that defendant thereafter had become aware or in the exercise of due care ought to have become aware of plaintiff's peril and his lack of comprehension of it or

apparent inability to extricate himself from it; that the defendant if he had been in the exercise of due care had a reasonable opportunity thereafter to avoid injuring the plaintiff; and that defendant failed to exercise such care."

Our concern is not with the statement of the rule, but with its application. The decisive question here is whether the evidence is such that the last clear chance doctrine can be invoked. The trial justice found that the facts were such that the doctrine was not applicable. The plaintiff contends that the evidence was such that it was applicable and therefore charges that the trial justice erred in refusing to charge as requested. We proceed to examine the evidence to determine the narrow issue thus presented.

The accident occurred on July 3, 1959, at approximately 7:30 a.m., on Elmwood avenue near the intersection of Roger Williams Court, which intersects Elmwood avenue on the westerly side where the traffic flows one way in a southerly direction. Elmwood avenue at that point is six lanes wide with a safety island in the middle. On each side of the island the highway is about 30 feet wide. The defendant was traveling on the westerly side in a southerly direction. On this side there is a parking lane, a driving lane, and a passing lane nearest to the island. There is also a cutout in the island near the location of the scene of the accident to allow traffic moving south to make a left turn at the cutout to the other side of the highway and proceed in a northerly direction. The day was clear and the pavement was dry.

At the time of the accident plaintiff was fifty-five years of age. Insofar as pertinent here, her testimony is substantially as follows. She left her home on Roger Williams Court to go to work and, as she was walking east down the small incline on Roger Williams Court, she saw the inbound bus going north towards Providence approaching her street. She signaled the driver who then stopped the

bus opposite her street. While standing at the corner of Elmwood avenue and Roger Williams Court, she looked to her left (north) to see if it was safe to cross; a black car proceedingly southerly in the parking lane stopped to permit her to cross. An automobile going north stopped adjacent to the inbound bus to permit her to cross. She looked through the windows of the black automobile, saw no other automobiles, hurried across, and became involved in the accident. She stated she got hit after she had taken about two steps beyond the black car which she testified had stopped to let her pass.

She also testified that she never saw defendant's automobile and did not know which portion of the car struck her; that she fell in the middle of the second lane and got up as quickly as she could; that defendant's car stopped approximately 75 feet away from her after the accident; that defendant came to her assistance and as he approached her the person driving the black and red automobile shouted to defendant, "Why didn't you stop?"; and that defendant looked at him but said nothing.

The defendant's version of the accident differs from that of plaintiff and is substantially as follows. He was driving in the third lane, next to the safety island, in a southerly direction at approximately 20 to 25 miles per hour, the speed limit in the area being 25 miles per hour. There were no vehicles in front of him as he approached the intersection and for 100 to 150 feet he had a clear view of the intersection. There was only one automobile in front of him but it was parked at the curb approximately 6 to 8 feet away from the corner of Elmwood avenue and Roger Williams Court. He was not sure of the distance and in subsequent testimony said he believed the parked car was 15 to 20 feet back from the intersection where the accident happened.

The defendant also testified that he first saw plaintiff

when he was in the third lane, approximately 6 to 7 feet away from the intersection; that she was approximately 25 to 27 feet away from his automobile; that she was 2 or 3 feet away from the curb at the corner of Elmwood avenue and Roger Williams Court as his car was approaching the end of the island; and that the next thing he knew, she just ran diagonally across the street in a southeasterly direction toward the bus stop.

He testified that he believed a collision was imminent and, therefore, accelerated his speed to 25 to 30 miles per hour; that he was not sure which part of his automobile struck plaintiff, but believed it was the right rear fender; that he stopped approximately 10 feet after the point of the accident; and that when his automobile came to a stop, plaintiff was approximately 8 to 10 feet behind his automobile. He stated that if he had applied his brakes, he would have stopped in the center of the cutout and she would have hit the body of his car and probably would have been badly injured. He hoped she would miss the car but she caught the rear bumper and fell. He also testified that the front of his car was beyond the cutout in the island when plaintiff ran into the rear side of his car; and that his car was three quarters through the intersection when he heard the thump. There is no evidence that defendant's car was damaged.

After the accident defendant drove plaintiff to her place of employment. On the way she gave him her name, address and telephone number written on a piece of paper on which she also wrote the words "my own fault." The trial justice allowed this paper in evidence over plaintiff's objection. It is marked Defendant's Exhibit A. It also appears from the evidence that around noon of the day of the accident, plaintiff's son was called to drive her home because she was in pain and felt nauseated. When she arrived home defendant and James J. Marsland, a police-

man, were there. She testified that the policeman went over to the car and talked to her with defendant present.

Officer Marsland was called as a witness by defendant. He testified that he, plaintiff and defendant had a conversation about the accident and that he took a statement from her and she told him her version of what happened. The defendant's counsel then asked Officer Marsland to tell what she said to him. Without objection by plaintiff, Officer Marsland testified as follows in reply to defendant's question:

"A: She stated to me that she left the house early in the morning; she was a little late; she was in a hurry to get the bus. This bus going in-bound on Elmwood Avenue was coming along and he had stopped for her, and that she ran in order to get the bus, and she ran into the right rear fender of this car and she fell down, and she hurt her elbow and her leg. The driver of the car asked her if she wanted to go to the hospital or doctor, and she told him she didn't want to go to the doctor, she wanted to get to work. He drove her to work. She further stated while at work she didn't feel well and her leg was bothering her and swelling and she came home. That is the time I saw her and I asked her if she wanted any further medical aid and she stated she would see her own doctor, and if I recall, she said it was Doctor Duffy on Pontiac Avenue but she did not know the number. She further stated to me at that time that the accident was no fault of the man who was driving, that she did run into the car.

"Q: Did she tell you what part of the car she ran into?

"A: In her statement she did say she ran into the right rear fender."

As already indicated, no objection was made by plaintiff to the admission of the officer's testimony regarding what plaintiff had said to him about the accident. The officer stated that he had refreshed his memory by looking at the

record of the police department, meaning of course, the police report, which had been marked as Defendant's Exhibit B for Identification.

The trial justice also allowed Officer Marsland, over plaintiff's objection, to tell what defendant. told him, in plaintiff's presence, about the accident. The officer testified that defendant made the following statement:

"A. The operator of the car stated that he was driving south on Elmwood Avenue at about 7:35 A.M. and he saw this lady on his right at Roger Williams Court and she ran suddenly into the highway and into the right rear of his car; that she fell down; that he stopped, got out, helped her up and offered her medical aid. Asked her if she wanted to go to a doctor, or be taken to any hospital, and she told him she only wanted to go to work. That then was the end of his statement."

Officer Marsland identified the police report, which had been marked for identification on behalf of defendant. He testified that it was the accident report which he made out and deposited with the traffic bureau, which then transferred it to the record bureau. The plaintiff cross-examined Officer Marsland about the latter's investigation of the accident and about the statements he took from the parties, but she objected to the introduction of the police report as a full exhibit. The trial justice overruled her objection and granted defendant's motion to introduce it in evidence. By agreement of the parties the trial justice allowed defendant to substitute a photostatic copy for the original. The copy is marked Defendant's Exhibit B.

The parties have briefed and argued their clashing views under two main points and for convenience we treat them in like manner.

The plaintiff's first contention under point I in her brief is that the evidence was such that the trial justice was duty bound to charge the jury on the doctrine of the last clear

chance because, as she claims, defendant's negligence was the proximate cause of the accident. The plaintiff made the following request for instructions:

"5. But there is one more thing to be considered, if you come to that point, because the law is that even though the plaintiff may have been guilty of negligence which contributed to the accident and the injury by putting herself in a position of peril, yet if thereafter the defendant, seeing the position in which she was, had an opportunity, by the exercise of reasonable care and prudence, to save her from the consequences of her negligence, it was his duty to do so, and if he failed to do so, and that was the immediate proximate cause of the injury to the plaintiff, she may still recover. That is what is called the last clear chance.

"If all the conditions just mentioned are found by you to have existed with respect to the accident in question, then you must find against the defense of contributory negligence, because under such conditions, the law holds the defendant liable for any injury suffered by the plaintiff and proximately resulting from the accident, despite the negligence of the plaintiff. This is a huminatarian [sic] doctrine under which the negligence of the plaintiff does not yet defeat her right of recovery. If you find that the plaintiff was negligent in crossing the street and into a position of danger and if you find that the defendant could have by the exercise of reasonable care avoided the accident and yet he failed to exercise such care, then, in that case, the negligence of the defendant and not of the plaintiff constitutes the proximate cause of the accident. If he knew or should have reasonably anticipated the presence of the plaintiff after the other motor vehicles stopped, then your verdict must be for the plaintiff."

In denying plaintiff's request the trial justice stated that he was relying on the statement of the rule appearing in *New England Pretzel Co.* v. *Palmer, supra,* and that in his judgment the last clear chance doctrine was not applicable

to the facts in this case. After examining the pertinent evidence, we come to the same conclusion.

We have already referred to the rule as stated in *New England Pretzel Co.* v. *Palmer, supra,* and we agree completely with the statement in *Malfetano* v. *United Electric Rys.,* 58 R. I. 129, 141, 191 A. 491, 498, where the court said:

> "The fundamental principle of the last clear chance doctrine is well stated in 1 Shearm. & Red. on Neg., (6th ed.) 255, §99, as follows: 'That principle is that the party who has the last opportunity of avoiding accident is not excused by the negligence of any one else. His negligence and not that of the one first in fault is the sole proximate cause of the injury.'"

In the case at bar plaintiff testified that although she looked to the left before crossing, she never saw defendant's automobile. The defendant, on the other hand, stated that he did not see her until he was 6 or 7 feet from the intersection and she was 25 to 27 feet away from him; that she was standing in the intersection 2 or 3 feet away from the curb; that he was then in the third lane traveling at approximately 20 to 25 miles per hour; that she started to run across the highway; and that he accelerated his speed to 25 to 30 miles per hour in order to try to avoid an accident.

On these facts plaintiff was not in a position of peril until such time as she emerged from in front of the automobile in the parking lane. The defendant did all he could possibly do to avoid striking her. He did not have sufficient time nor was he so far distant from plaintiff as to have been able to avoid the impact. Although defendant had an unobstructed view of the intersection for 100 to 150 feet, after plaintiff had put herself in a position of peril, he did not have an opportunity, by the exercise of reasonable care and prudence, to save her from the consequences of her own negligence. In the circumstances, we cannot say that

the negligence of defendant was the proximate cause of the accident. On the contrary it appears that the negligence of plaintiff herself was the proximate cause of the accident and, as we have already said, there was nothing defendant could do to avoid the impact. See *Kalify* v. *Udin,* 52 R. I. 191, 159 A. 644. The essential elements that "* * * defendant thereafter had become aware or in the exercise of due care ought to have become aware of plaintiff's peril * * *" and "* * * had a reasonable opportunity thereafter to avoid injuring the plaintiff * * *," *Palmer, supra,* at 391, 67 A.2d at 42, do not exist, and therefore the last clear chance doctrine is inapplicable. Prosser, Torts §65, p. 440 (3d ed. 1964). Therefore it is unnecessary to further encumber this opinion with a discussion of all the cases on this point cited by plaintiff.

The plaintiff's next contention under point I is based on her exception to the refusal of the trial justice to grant Request for Instructions, No. 7, first paragraph, which reads as follows:

> "You are further instructed that if you find from the evidence that the plaintiff started across Elmwood Avenue at the intersection of Roger Williams Court before the car of the defendant reached that intersection, then you are instructed that Mrs. Major, as the pedestrian, had the right of way over the car driven by the defendant; and it was the duty of the driver to either change course, slow down, or come to a complete stop, if necessary, to permit her to safely make the crossing; and if you find that she was exercising due care and that the driver disregarded his duty, then you must find for the plaintiff."

The plaintiff relies on G. L. 1956, §§31-1-25[2] and 31-18-3[3]. She states that §31-1-25 establishes that she was crossing in the area of an unmarked crosswalk. Section 31-1-25(a) defines an unmarked crosswalk and §31-1-25(b) defines a marked crosswalk.

General laws 1956, §31-18-5, provides:

> "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

There is no evidence that there was a marked crosswalk, but even if there were plaintiff was bound by that portion of §31-18-3 which provides:

> "* * * no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."

Our examination of the evidence discloses no right-of-way in the plaintiff. In view of our conclusion that in the circumstances defendant did everything he could reasonably do to avoid the accident after plaintiff started to run across the highway, we hold that the trial justice did not err in refusing to give the requested instructions.

---

[2]"31-1-25. Crosswalk.—(a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or in the absence of curbs, from the edges of the traversable roadway.

"(b) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface."

[3]"31-18-3. Right of way in crosswalk.—When traffic control signals are not in place or not in operation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. This provision shall not apply under the conditions stated in §31-18-6."

We agree with the rule stated in *Green* v. *Tingle,* 92 R. I. 393, 395, 169 A.2d 373, 374, cited by plaintiff, but that case is so clearly distinguishable on its facts from the case at bar as to require no further discussion, other than to repeat that the rule stated in *Tingle* is absolutely sound but is without application to the factual situation in the instant case.

Under point II plaintiff has briefed and argued her exceptions to two evidentiary rulings. We consider first her contention that the trial justice erred in granting defendant's motion to admit in evidence Defendant's Exhibit A, a piece of paper with the handwriting of plaintiff thereon which she had given to defendant. As we have previously stated, this paper contained her name, address, telephone number and the words "my own fault."

The plaintiff states that the statement signed by her was merely a conclusion or legal opinion and not a statement of fact pertaining to the accident; that the question of fault was the very question to be determined by the jury; and that, therefore, the trial justice committed prejudicial error in allowing the piece of paper in evidence.

The plaintiff has cited several cases from other jurisdictions and two Rhode Island cases, *Co-operative Building Bank* v. *Hawkins,* 30 R. I. 171, 73 A. 617, and *Randall* v. *Holmes,* 69 R. I. 41, 31 A.2d 17, to support her position. The cases from the foreign jurisdictions are not relevant.

While we agree with the statement of the law in *Hawkins* and *Holmes,* we do not agree that it applies in the case at bar. We say this because here the paper was not admitted to prove that the accident was caused by plaintiff's fault; rather it was admitted in evidence, as the trial justice pointed out at page 66 of the transcript, for impeachment purposes as a prior contradictory statement made by the plaintiff.

In any event, it is our opinion that even if the trial jus-

tice erred in admitting the paper in question over plaintiff's objection, it did not constitute prejudicial error because plaintiff had already testified, without objection on her part, about the contents of the statement. It appears from the transcript that in cross-examination she identified the paper and her handwriting thereon and, without objection, read the contents of the statement.

We come finally to plaintiff's contention that the trial justice committed prejudicial error in granting defendant's motion to admit in evidence Defendant's Exhibit B, the police report of the accident, which contained statements given to Officer Marsland by defendant and plaintiff, including a statement by plaintiff to the officer that the accident was her fault. We have already pointed out that these statements were made to the officer in the presence of both parties shortly after the accident. Exhibit B contains a statement purportedly made by plaintiff to the officer in the presence of defendant which reads as follows:

"Statement of Gladys I. Major., Pedestrian

'I, left my home late and I, was in a hurry because the bus was coming., and when I, got to Elmwood Av. I, guess I, did'nt look and I, saw the bus stopping for me and I, started to run across the street and I, ran into the rear fender of the car.

'The driver of the car offered to take me to my doctor or the hospital but at that time I, must have been excited and I, felt allright,. but after I, got to work my right knee started to swell and I, had to be taken home. I, will se my own doctor later to day,.

'Dr. F. Duffy, of Pontiac Ave. Cranston, R.I. This is all my own fault, I, did'nt look and I, ran right into this mans car,. He is not to blame at all.' " (sic *passim*, entire passage)

The plaintiff argues that the introduction of the police report is objectionable for two reasons: (1) that it is hearsay in that the officer making the report is relying on the testimony of another and is not affirming his actual ob-

servations, and (2) that the testimony of witnesses, other than qualified experts, must be confined to statements of fact and may not extend to opinions or conclusions, regardless of the knowledge of the witness to the event.

It would unduly prolong this opinion were we to discuss the cases cited by plaintiff in support of her contention that the police report was inadmissible in evidence. While we agree that the general rule is that statements contained in a police report giving conclusions or opinions concerning the fault or responsibility for an accident are inadmissible to prove fault or responsibility, it does not follow that such statements are inadmissible for the purpose of impeaching subsequent contradictory statements. See *Chandler* v. *Harger*, 253 Iowa 565, 569, 113 N.W.2d 250, 252, cited by plaintiff, where the court said:

> "Evidence of contradictory statements made out of court are admissible as tending to discredit and impeach a witness but they are not admissible as affirmative proof of the facts related in the statement."

In the case at bar the police report was admitted in evidence to show what the plaintiff had said to the officer in the defendant's presence several hours after the accident; it was admitted for the purpose of showing a prior contradiction of the statement of the plaintiff. In the circumstances the trial justice's ruling admitting the police report was not error. But even if the admission of the report were error, it certainly was not prejudicial error, because, as pointed out by the defendant, although the plaintiff objected to the introduction of the police report, she made no objection to the reading by Officer Marsland of her statement made to him wherein she described what happened at the time of the accident and said that the accident was no fault of the man who was driving.

In each case the plaintiff's exceptions are overruled, and

each case is remitted to the superior court for entry of judgment on the verdict.

*Temkin, Merolla & Zurier, Amedeo C. Merolla,* for plaintiff.

*Eugene J. Sullivan,* for defendant.