STATE

v.

**James M. FARLETT.**

No. 84–133–C.A.

Supreme Court of Rhode Island.

April 4, 1985.

Reargument Denied May 9, 1985.

Dennis J. Roberts, Atty. Gen., Donna M. DiDonato, Sp. Asst. Atty. Gen., for plaintiff.

Robert B. Mann, Providence, for defendant.

## OPINION

KELLEHER, Justice.

A Superior Court jury has found the defendant, James M. Farlett (Farlett), guilty on three counts of first-degree sexual assault. He is now before us on his appeal, in which he raises a multiplicity of issues.

On April 15, 1983, a grand jury for Providence and Bristol Counties returned an indictment charging that Farlett, between the first day of June 1981 and the twentieth day of November 1981, did engage on three occasions in the sexual penetration of his stepdaughter, Lorilee.[1]

---

1. This is not her real name.

We see no necessity for detailing the events that were presented to the jury. It is sufficient to point out that Lorilee testified that Farlett had sexually assaulted her from the time she was six or seven years old and that these assaults consisted of both oral and anal intercourse. Lorilee also testified that between June and November of 1981, when the family resided in Johnston, Rhode Island, her stepfather sexually assaulted her approximately fifty times, mostly when her mother was out of the house. Among the defense witnesses was Farlett, who denied that he had engaged in any iniquitous conduct at any time with his stepdaughter.

After the jury was impaneled but before opening statements, the prosecutor who presented the state's evidence advised the trial justice that he intended to elicit testimony from the complaining witness concerning acts by Farlett other than those charged in the indictment. Farlett's counsel, in response to this pronouncement, informed the court that he had no objection to this strategy since the defense was also desirous of presenting evidence concerning extraneous sexual conduct on Lorilee's part. As a consequence of this "pretrial agreement," both the prosecutor and defense counsel, often without objection from opposing counsel, succeeded in adducing testimony concerning, among other things, previous occasions in which Farlett had taken indecent liberties with his stepdaughter as well as testimony relating to Lorilee's alleged sexual activities with her older brother and a former boyfriend.

Farlett now complains that the introduction of massive amounts of extremely prejudicial, irrelevant testimony, including testimony about his striking his children, resulted in a deprivation of his due-process constitutional right to a fair trial. Pressing his appeal further, Farlett argues that

the failure of his trial counsel [2] to object to this massive amount of inadmissible and prejudicial testimony deprived him of effective assistance of counsel in violation of his federal and state constitutional rights.

▇▇▇▇ These assignments of error, however, are not yet reviewable by this court. In regard to the effective-assistance-of-counsel claim and any other issues that may reflect ineffective assistance of counsel, we need only reiterate our pronouncement of last term when we held that "the appropriate vehicle for review of claims of ineffective assistance of counsel is the request for post-conviction relief." [3] *State v. Rondeau*, R.I., 480 A.2d 398, 403 (1984); *See also State v. Roderick*, 121 R.I. 896, 403 A.2d 1090 (1979); *State v. Levitt*, 118 R.I. 32, 371 A.2d 596 (1977). Our reluctance to entertain such claims is based on the rooted principle that "only specific rulings of a trial justice are reviewable on direct appeal." *State v. D'Alo*, R.I., 477 A.2d 89, 90 (1984); *see also* Yackle, *Postconviction Remedies* § 1 at 2 (1981). Unless a defendant complies with the procedure for post-conviction relief, we shall not have the benefit of a full record and a decision of the Superior Court regarding whether or not defense counsel's alleged failings were a deliberate bypass of the required procedure or a genuine manifestation of ineffective assistance of counsel. Consequently, we decline Farlett's invitation, despite "new legal developments" and the "facts of this particular case," to reconsider our position on this issue now.

▇▇▇ The principles supporting our refusal to consider claims of ineffective counsel on direct appeal also justify our conclusion that Farlett's due-process argument regarding an alleged denial of his right to a fair trial is not properly before us on direct appeal. Without degrading the seriousness of this issue, we adhere to our prior prac-

---

**2.** Appellate counsel was not part of the defense at trial.

**3.** Under G.L.1956 (1969 Reenactment) § 10–9.1–1(a)(1), as enacted by P.L.1974, ch. 220, § 3, persons claiming that their criminal convictions

were obtained "in violation of the constitution of the United States or the constitution or laws of this state * * *" may file a petition for post-conviction relief.

tice of not reviewing such claims on direct appeal unless they are grounded upon specific trial-court rulings. This policy, of course, has no effect on defendant's right to raise this issue in the more proper form of a postconviction proceeding.

In three instances defense counsel successfully objected to the prosecutor's efforts during cross-examination to elicit from defense witnesses evidence relating to complaints made to various state officials, both in Rhode Island and elsewhere, of Farlett's physical abuse of his children. Although no motion to strike or other cautionary effort was made on any of these three occasions, defendant now claims prejudice because some of the questions themselves communicated information that damaged the defense. Defense counsel's failure to take ameliorative action in these situations is a further circumstance that might reflect on Farlett's ineffective-assistance-of-counsel claim and thus can be addressed in a postconviction proceeding.

Farlett also claims that the trial justice erred in admitting, over his counsel's objection, evidence that Farlett and Lorilee were home alone at times, that the mother never observed her husband beating Lorilee, and that Farlett at one time struck his younger son with a knife. At trial, Lorilee was allowed to testify that her stepfather told her that if she told anybody about his improper advances, she would be killed; she further testified that she believed he was capable of killing her. Frank,[4] Lorilee's older brother, testified that he saw Farlett strike the complaining witness. Lorilee's grandmother stated that her granddaughter, after viewing a television program about child abuse, remarked, "So was I," to the grandmother's observation that such children "must have been terribly afraid." Defense counsel in each of these situations offered a timely objection, which was overruled. The defendant now claims that these rulings by the trial justice was error. We disagree.

The defense itself relied heavily on the fact that a substantial period of time elapsed before Lorilee said anything about her stepfather's improper advances. It was upon the basis of this fact that the defense attempted to discredit her testimony and credibility. It follows that the reasons for this delay were issues at trial. The state theorized, and the jury and the trial justice apparently agreed, that fear of defendant hampered any inclination on Lorilee's part to inform her mother or anyone else about these activities. Any testimony that was reasonably probative on the issue of Lorilee's fear of her stepfather was thus relevant and admissible, and on this appeal defendant cannot be heard to complain.

In the evidentiary facet of this appeal, two additional points remain for our consideration. Both involve testimony by defense witnesses, over the unsuccessful objections by defense counsel, that touched upon investigations about child abuse by the Rhode Island Department of Children and Their Families (DCF). We shall assume, without deciding, that the trial justice erred in admitting this particular testimony. Even so, such error cannot be viewed as prejudicial since a similar reference to DCF was elicited by the prosecutor without objection during the state's case when he was examining Lorilee's grandmother. *Major v. Grieg*, 102 R.I. 379, 391–92, 230 A.2d 846, 853 (1967). Any damage resulting from a reference to DCF, if indeed there is any, was already done by the time Farlett's trial counsel first objected thereto.

The defense in this case also requested a series of jury instructions that would have informed the jurors that in evaluating the credibility of the complainant, they should take into consideration the complaining witness's hesitation in making a complaint against her stepfather. We must bypass the merits of Farlett's argument on this issue because his objections, at trial, failed to comply with the dictates

4. This is not his real name.

of Rule 30 of the Superior Court Rules of Criminal Procedure. That rule "expressly bars a party from assigning as error any portion of a charge or omission therefrom unless he specifically directs the trial justice's attention to the matter to which he objects and gives the ground for his objection." *State v. Rodriquez*, R.I., 478 A.2d 171, 173 (1984) (quoting *State v. Dionne*, R.I., 442 A.2d 876, 885 (1982)).

In the instant case, Farlett clearly satisfied the first obligation of Rule 30 in that he distinctly objected to the trial justice's failure to charge the jury in accordance with his proffered credibility instructions. But Rule 30 directs trial counsel not only to object to the charge as given but also to articulate the challenge in such a fashion that the court is apprised of the exact nature of the alleged error, be it of commission or omission.

 Even if compliance with the rule was had, we fail to see how defendant would have been prejudiced because counsel for both sides devoted much of their arguments to the jury on the period of time that passed between the assaults and the time Lorilee made her complaint. The prosecution acknowledged the importance of this issue, and its explanation was simple—Lorilee was afraid of her stepfather. The defense, on the other hand, went to great lengths in telling the jury that Lorilee's silence was concrete evidence that everything at the house was in apple-pie order. The jury obviously believed that Lorilee's silence was due to fear rather than to the fact that life with her stepfather was great.

The defendant also faults the trial justice for having failed to give a cautionary instruction to the effect that a charge of first-degree sexual assault is easily made and difficult to disprove. The inspiration for such a request apparently was the seventeenth-century writings of Sir Matthew Hale, Lord Chief Justice of the Court of King's Bench from 1671 to 1676. 1 M. Hale, *History of the Pleas of the Crown* (1st Amer. ed. 1847). In regard to the admission of evidence from infants in rape cases, Hale asserted that "rape is a most detestable crime, and therefore ought severely and impartially to be punished with death; but it must be remembered, that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, tho never so innocent." *Id.* at 634.

The California Supreme Court rejected the use of the so-called Lord Hale instruction in *People v. Rincon-Pineda*, 14 Cal.3d 864, 538 P.2d 247, 123 Cal.Rptr. 119 (1975). After examining the seventeenth-century English origins of the instruction and its development over the past three hundred years, the court reasoned that

"[w]hatever might have been its historical significance, the disapproved instruction now performs no just function, since criminal charges involving sexual conduct are no more easily made or harder to defend against than many other classes of charges, and those who make such accusations should be deemed no more suspect in credibility than any other class of complainants." *Id.* at 883, 538 P.2d at 260, 123 Cal.Rptr. at 132.

The California Supreme Court also concluded that the ordinary instructions presented to the jury to aid it in judging the credibility of witnesses are sufficient in such cases. Other courts have also determined that this cautionary instruction should not be given, generally reasoning that it results in an inappropriate comment on the evidence by the trial justice. *State v. Settle*, 111 Ariz. 394, 396, 531 P.2d 151, 153 (1975); *State v. Feddersen*, 230 N.W.2d 510, 515 (Iowa 1975); *State v. Mellis*, 2 Wash.App. 859, 862, 470 P.2d 558, 560 (1970).

In this jurisdiction we have repeatedly stressed that a trial justice is obligated to avoid expressing any opinion about the weight of the evidence or the credibility of witnesses as long as the case is before the jury. *State v. Desmarais*, R.I., 479 A.2d 745, 747 (1984); *State v. DeMasi*, R.I., 413 A.2d 99, 100 (1980). Finally, we note that several State Legislatures have enacted

statutes prohibiting the use of this cautionary instruction.[5] The trial justice properly rejected the Lord Hale request.

As alluded to previously, the indictment in this case charged three counts of first-degree sexual assault. Both at the conclusion of the state's case and after the defense rested, Farlett unsuccessfully moved for a judgment of acquittal, particularly urging the court to grant this motion at least in regard to one count in the indictment. The defense theorized that since the complaining witness had testified only to two specific instances of sexual assault, the remaining count should be dismissed.[6] During the initial motion for judgment of acquittal, defense counsel conceded that Lorilee had testified that her stepfather had sexually assaulted her approximately fifty times between June 1, 1981, and November 20, 1981, but went on to argue that since a third specific episode was missing from her testimony, defendant was entitled to a judgment of acquittal on one count. We disagree.

▮ The standard that is to be applied by a trial justice when considering a motion for a judgment of acquittal is firmly fixed. When ruling upon such a motion, a trial justice is to consider only that evidence that the prosecution claims is capable of generating proof beyond a reasonable doubt. Such evidence is to be viewed in the light most favorable to the state, drawing therefrom all reasonable inferences that are consistent with the accused guilt. At this juncture of the trial, neither the weight of the evidence nor the credibility of the witnesses is to be considered. *State v. von Bulow*, R.I., 475 A.2d 995, 1020–21 (1984); *State v. Romano*, R.I., 456 A.2d

746, 756–57 (1983). In the record before us, there is ample evidence that establishes, when viewed in a light most favorable to the state, that defendant was guilty of three counts of first-degree sexual assault. We conclude that the trial justice was correct when he found there was sufficient evidence to sustain all the charges.

Lastly, Farlett contends that it was error for the trial justice to deny his motion for a new trial. In support of his position, he merely echoes his argument that the evidence presented was insufficient to sustain all the counts in the indictment. Since Farlett has not pointed to any instance in which the judge overlooked or misconceived evidence or was otherwise clearly wrong, we have no hesitation in endorsing the denial of the motion for new trial.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of this case are remanded to the Superior Court for further proceedings.

▮

---

5. Colorado, for example, has enacted Colo.Rev. Stat. § 18–3–408 (1978), which provides, in pertinent part, as follows:

 "In any criminal prosecution under sections 18–3–402 to 18–3–405 * * * the jury shall not be instructed to examine with caution the testimony of the victim solely because of the nature of the charge, nor shall the jury be instructed that such a charge is easy to make but difficult to defend against, nor shall any similar instruction be given."

6. Lorilee testified at trial that she could remember two specific instances in which her stepfather sexually assaulted her. One reportedly occurred on the first night the family spent in their new Johnston home, and the other involved an instance when everyone had left the residence and Farlett told her to "lay down on the floor."